1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) **Case No. SACV15-00585CJC(JPRx)** |
| v. | ) |
| DENNY LAKE individually and also d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Agency, and Advocacy Program; CHAD CALDARONELLO (a/k/a Chad Carlson and Chad Johnson), individually and as an officer of C.C. Enterprises, Inc.; C.C. ENTERPRISES, INC. (also d/b/a HOPE Services, Trust Payment Center, and Retention Divisions); DEREK NELSON (a/k/a Dereck Wilson), individually and as an officer of D.N. Marketing, Inc.; D.N. MARKETING, INC. (also d/b/a HAMP Services and Trial Payment Processing); BRIAN PACIOS (a/k/a Brian Barry and Brian Kelly); JUSTIN MOREIRA (a/k/a Justin Mason, Justin King, and Justin Smith), | ) *EX PARTE* **TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF TEMPORARY RECEIVER, LIMITED EXPEDITED DISCOVERY, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** [UNDER SEAL] |
| Defendants, and | ) |
| CORTNEY GONSALVES, | ) |
| Relief Defendant. | ) |

1

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, has filed a Complaint to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and Mortgage Assistance Relief Services Rule ("MARS Rule"), 12 C.F.R. Part 1015, in connection with the marketing and sale of mortgage assistance relief services, and has applied for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

## **FINDINGS OF FACT**

This Court, having considered the FTC's Complaint, *ex parte* application, declarations, exhibits, and memoranda filed in support of the FTC's application, and the evidence presented, finds that:

1.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto;

2.     There is good cause to believe that venue lies properly with this Court;

3.     There is good cause to believe that Defendants Chad Caldaronello, C.C. Enterprises, Inc., Derek Nelson, D.N. Marketing, Inc., Brian Pacios, and Justin Moreira have engaged and are likely to continue to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), including but not limited to falsely and misleadingly representing, directly or indirectly, expressly or by implication that:

     a.     Defendants will obtain mortgage modifications for consumers that will make their payments substantially more affordable, will substantially lower their interest rates, and/or will help them avoid foreclosure;

     b.     A consumer's trial payments and/or reinstatement fee payment will be held in his or her lender's trust account and either be paid to his or her lender at the end of the trial period to finalize his or her modification, or be refunded;

     c.     Defendants are affiliated with, endorsed or approved by, or otherwise associated with the United States government, Making Home Affordable ("MHA"), the Department of Housing and Urban Development ("HUD"), or the Neighborhood Assistance Corporation of America ("NACA");

     d.     Defendants communicate with specialized departments, divisions, or "higher-ups" at the maker, holder, or servicer of the consumer's dwelling loan;

     e.     The consumer's lender can no longer foreclose on the consumer's house after Defendants receive signed documents and the first payment from the consumer;

f.      Defendants typically deliver a loan modification within several months;

4.      There is good cause to believe that Defendants Chad Caldaronello, C.C. Enterprises, Inc., Derek Nelson, D.N. Marketing, Inc., Brian Pacios, and Justin Moreira have engaged and are likely to continue to engage in acts or practices that violate the MARS Rule, 12 C.F.R. Part 1015, including but not limited to:

a.      Misrepresenting, expressly or by implication, material aspects of any mortgage assistance relief services, in violation of the MARS Rule; 12 C.F.R. § 1015.3(b);

b.      Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of the MARS Rule; 12 C.F.R. § 1015.3(a);

c.      Failing to make disclosures in all general and consumer-specific commercial communications as required by the MARS Rule; 12 C.F.R. § 1015.4(a)-(c);

d.      Asking for or receiving payment of any fee or other consideration before a consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's loan holder or servicer in violation of the MARS Rule; 12 C.F.R. § 1015.5(a);

5.      There is good cause to believe that Defendants Chad Caldaronello, C.C. Enterprises, Inc., Derek Nelson, D.N. Marketing, Inc., Brian Pacios, and Justin Moreira have engaged and are likely to continue to engage in acts or practices that violate the TSR, 16 C.F.R. Part 310, including but not limited to:

4

a.      In connection with the telemarketing of Defendants' services, misrepresenting, directly or indirectly, expressly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of such services, in violation of the TSR; 16 C.F.R. § 310.3(a)(2)(iii);

b.      In connection with the telemarketing of Defendants' services, misrepresenting, directly or indirectly, expressly or by implication, material aspects of the nature or terms of Defendants' refund, cancellation, exchange, or repurchase policies, in violation of the TSR; 16 C.F.R. § 310.3(a)(2)(iv);

c.      In connection with the telemarketing of Defendants' services, asking for or receiving payment of any fee or other consideration in advance of obtaining a loan or other extension of credit after representing a high likelihood of success in obtaining or arranging a loan or other extension of credit to consumers, in violation of the TSR; 16 C.F.R. § 310.4(a)(4).

6.      There is good cause to believe that Defendant Denny Lake, both individually and d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Agency, and Advocacy Program, has engaged and is likely to continue to engage in acts or practices that violate the MARS Rule, 12 C.F.R. Part 1015, including but not limited to:

a.      Providing substantial assistance or support to sellers and telemarketers in connection with the contacting and communicating with consumer clients on behalf of Defendants Chad Caldaronello, C.C. Enterprises, Inc., Derek Nelson, D.N. Marketing, Inc., Brian Pacios, and Justin Moreira, when Defendant Lake knew or consciously avoided knowing that these Defendants were engaged in acts or practices that violated the MARS Rule; and

b.      Providing substantial assistance or support to Defendants Chad Caldaronello, C.C. Enterprises, Inc., Derek Nelson, D.N. Marketing, Inc., Brian Pacios, and Justin Moreira, who were in the course of providing, offering to

provide, or arranging for others to provide mortgage assistance relief services, when Defendant Lake knew or consciously avoided knowing that these Defendants were engaged in acts or practices that violated the MARS Rule.

7.      There is good cause to believe that Relief Defendant Cortney Gonsalves received funds or assets that can be traced directly to Defendants' unlawful acts or practices, and that she has no legitimate claim to those funds;

8.      There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act, MARS Rule, and the TSR unless Defendants are restrained and enjoined by Order of this Court;

9.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants continue to be restrained and enjoined by Order of this Court and that in accordance with Fed. R. Civ. P. 65(b), the interest of justice requires that the FTC's application be heard *ex parte* without prior notice to Defendants.  Therefore, there is good cause for relieving the FTC of the duty to provide Defendants with prior notice of the FTC's application;

10.      Good cause exists for permitting the FTC to take limited expedited discovery from third parties as to the existence and location of assets and Documents;

11.      Weighing the equities and considering the FTC's likelihood of ultimate success, a temporary restraining order with an asset freeze, limited expedited discovery as to the existence and location of assets and Documents, and other equitable relief is in the public interest; and

12.     No security is required of any agency of the United States for the issuance of a Temporary Restraining Order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purposes of this Temporary Restraining Order, the following definitions apply:

A.     **"Assets"** means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Defendants or Relief Defendant, or held for the benefit of Defendants or Relief Defendant, wherever located, whether in the United States or abroad, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), shares of stock, futures, all cash or currency, and trusts, including but not limited to a trust held for the benefit of any Defendant or Relief Defendant, any of the Individual Defendants' or Relief Defendant's minor children, or any of the Individual Defendants' or Relief Defendant's spouses, and shall include both existing assets and assets acquired after the date of entry of this order, or any interest therein.

B.     "**Asset Freeze Accounts**" are accounts that are (1) associated with Asset Freeze Defendants and (2) are maintained at Bank of America with an account number ending in "6164"; are maintained at Bank of America with an account number ending in "4546"; are maintained at Bank of America with an account number ending in "3352"; are maintained at Comerica Bank with an account number ending in "2545"; are maintained at Comerica Bank with an account number ending in "6298"; are maintained at Comerica Bank with an account number ending in "2594"; are maintained at Comerica Bank with an account number ending in "6132"; are maintained at Comerica Bank with an account number ending in "8381"; are maintained at Comerica Bank with an

account number ending in "8344"; are maintained at Comerica Bank with an account number ending in "8707"; are maintained at Comerica Bank with an account number ending in "3367"; are maintained at Comerica Bank with an account number ending in "5726"; are maintained at Comerica Bank with an account number ending in "8882"; are maintained at Comerica Bank with an account number ending in "6561"; are maintained at Comerica Bank with an account number ending in "6320"; are maintained at Farmers & Merchants Bank with an account number ending in "1538"; are maintained at JP Morgan Chase with an account number ending in "1963"; are maintained at JP Morgan Chase with an account number ending in "0038"; are maintained at JP Morgan Chase Bank with an account number ending in "4854"; are maintained at JP Morgan Chase Bank with an account number ending in "6050"; are maintained at JP Morgan Chase Bank with an account number ending in "6529"; are maintained at JP Morgan Chase Bank with an account number ending in "6636"; are maintained at JP Morgan Chase Bank with an account number ending in "9414"; are maintained at JP Morgan Chase Bank with an account number ending in "0647"; are maintained at JP Morgan Chase Bank with an account number ending in "9828"; are maintained at JP Morgan Chase Bank with an account number ending in "9215"; are maintained at JP Morgan Chase Bank with an account number ending in "0618"; are maintained at JP Morgan Chase Bank with an account number ending in "1855"; are maintained at JP Morgan Chase Bank with an account number ending in "2920"; are maintained at JP Morgan Chase Bank with an account number ending in "6320"; are maintained at JP Morgan Chase Bank with an account number ending in "2666"; are maintained at Wells Fargo Bank with an account number ending in "2347"; are maintained at Wells Fargo Bank with an account number ending in "6854"; are maintained at Wells Fargo Bank

with an account number ending in "9082"; or are maintained at Wells Fargo Bank with an account number ending in "1575."

C.     **"Asset Freeze Defendant"** means all Corporate Defendants, Individual Defendants, and Relief Defendant Gonsalves.

D.     **"Assisting others"** includes but is not limited to:  (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communications; (3) formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services; (4) providing names of, or assisting in the generation of, potential customers; (5) performing or providing marketing, billing, or payment services of any kind; (6) acting or serving as an owner, officer, director, manager, or principal of any entity; or (7) providing telemarketing services.

E.     **"Corporate Defendants"** means C.C. Enterprises, Inc. (also d/b/a HOPE Services, Trust Payment Center, and Retention Divisions), and D.N. Marketing, Inc. (also d/b/a HAMP Services and Trial Payment Processing), and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

F.     **"Defendants"** means all Individual Defendants, Corporate Defendants, and Denny Lake (d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Division, Advocacy Agency, Advocacy Program, or any other entity providing Mortgage Assistance Relief Products or

Services from an office located at 2280 University Drive, Suite 101, Newport Beach, California 92660) and their successors, assigns, affiliates, subsidiaries, or agents, individually, collectively, or in any combination, and each of them by whatever names each might be known.

G. **"Document"** is synonymous in meaning and equal in scope to the terms "document" and "electronically stored information," as described and used in Federal Rule of Civil Procedure 34(a)(1)(A).

H. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.

I. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

J. **"Individual Defendants"** means Denny Lake, Chad Caldaronello (a/k/a Chad Carlson and Chad Johnson), Derek Nelson (a/k/a Dereck Wilson), Brian Pacios (a/k/a Brian Barry and Brian Kelly), Justin Moreira (a/k/a Justin Mason, Justin King, and Justin Smith), and any other names they might use, have used, be known or have been known.

K. **"Mortgage assistance relief product or service"** means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

    1. stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.      negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.      obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.      negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

5.      obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.      negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, (iii) or any other disposition of a dwelling loan other than a sale to a third party that is not the dwelling loan holder. The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application and offering to provide or providing legal services, or offering to sell a consumer a plan or subscription to a service that provides such assistance.

L.      **"Person"** means any individual, group, unincorporated association, limited or general partnership, corporation or other business entity.

M.      **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

N.      **"Receivership Defendants"** means:  C.C. Enterprises, Inc. (also d/b/a HOPE Services, Trust Payment Center, and Retention Divisions); D.N. Marketing, Inc. (also d/b/a HAMP Services and Trial Payment Processing); any entity located at 23161 Mill Creek Drive, Suite 230, Laguna Hills, California 92653 that markets or provides any service that the Final Order in *FTC v. Lakhany*, No. 8:12-cv-337

(Feb. 28, 2013) prohibits Brian Pacios from marketing or providing; these entities' subsidiaries, affiliates, divisions, successors, and assigns; and Denny Lake (d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Division, Advocacy Agency, Advocacy Program, or any other business providing Mortgage Assistance Relief Products or Services from an office located at 2280 University Drive, Suite 101, Newport Beach, California 92660). "Receivership Defendants" include businesses that lack formal legal structure (such as businesses operating under fictitious business names), but that otherwise satisfy the definition of "Receivership Defendant."

O.   **"Relief Defendant"** means Courtney Gonsalves and her successors and assigns, and each of them by whatever names each might be known.

P.   **"Temporary Receiver"** means the Temporary Receiver appointed in Section X of this Order. The term "Temporary Receiver" also includes any deputy receivers or agents as may be named by the Temporary Receiver.

Q.   **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc).

R.   **"Telemarketing"** means a plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

I.   <u>**PROHIBITED REPRESENTATIONS**</u>

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief

service or debt relief service, are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      that any Defendant or any other person typically will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable, will substantially lower their interest rates, and/or will help them avoid foreclosure;

B.      that money from the consumer, including but not limited to trial payments and/or reinstatement fee payments, will be held in his or her lender's trust account and either be paid to his or her lender at the end of the trial period to finalize his or her modification, or be refunded;

C.      that any Defendant is affiliated with, endorsed or approved by, or otherwise associated with the United States government, the MHA program, HUD, or NACA;

D.      that any Defendant communicates with specialized departments, divisions or "higher ups" at the maker, holder, or servicer of a consumer's dwelling loan;

E.      that the consumer's lender can no longer foreclose on the consumer's house after any Defendant has received signed documents and a consumer's first payment; and

F.      that any Defendant can deliver a loan modification within any specific or general timeframe.

## II.      DISCLOSURES REQUIRED BY AND REPRESENTATIONS PROHIBITED BY THE MARS RULE

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing,

promotion, offering for sale, sale, or provision of any mortgage assistance relief service or debt relief service, are hereby temporarily restrained and enjoined from engaging in, or assisting others in engaging in, the following conduct:

A.      Misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, in violation of 12 C.F.R. § 1015.3(b);

B.      Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his lender or servicer, in violation of 12 C.F.R. § 1015.3(a);

C.      Failing to make the following disclosure in all general and consumer-specific commercial communications:  "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of 12 C.F.R. § 1015.4(a)(1) & 1015.4(b)(2);

D.      Failing to make the following disclosure in all general and consumer-specific commercial communications:  "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of 12 C.F.R. § 1015.4(a)(2) & 1015.4(b)(3);

E.      Failing to make the following disclosure in all consumer-specific commercial communications: "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of 12 C.F.R. § 1015.4(b)(1).  For the purposes of this subsection, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including but not limited to, all fees and charges; and

14

F.      Failing, in all general commercial communications, consumer-specific commercial communications, and other communications in cases where any Defendant or person has represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, to place clearly and prominently, and in close proximity to any such representation the following disclosure: "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of 12 C.F.R. § 1015.4(c).

## III.   ADVANCE FEE PROHIBITION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service or debt relief service, or in connection with telemarketing, are hereby temporarily restrained and enjoined from asking for, or receiving payment of, any fee or other consideration until a consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief the Defendants obtained on the consumer's behalf.

## IV.   PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief

service or debt relief service, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or business and personal finances, of Defendants, or an entity directly or indirectly under the control of Defendants.

## V.    <u>DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONICALLY STORED INFORMATION</u>

**IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them and pending determination of the FTC's request for a preliminary injunction, (1) any person hosting any Internet website, server, or "cloud-based" electronic storage for, or on behalf of, any Defendant, and (2) Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall:

A.    Immediately take all necessary steps to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, and containing statements or representations prohibited by Sections I and II of this Order cannot be accessed by the public; and

B.    Prevent the alteration, destruction or erasure of any (1) Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, by preserving such websites in the format in which they are maintained currently and (2) any electronically stored information stored on behalf of Corporate Defendants, Lake (individually or d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Agency, and Advocacy Program), or entities in active concert or participation with any of them.

**VI.   SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS**

**IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a preliminary injunction, any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, and containing statements or representations prohibited by Sections I and II of this Order and provide immediate notice to counsel for the FTC of any other Internet domain names registered by Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise.

**VII.   PROHIBITION ON USE OF CUSTOMER INFORMATION**

**IT IS FURTHER ORDERED** that Defendants, and Defendants' officers, agents, directors, servants, employees, salespersons, and attorneys, as well as all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby temporarily restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, Social Security number, credit card number, debit card number, bank account number, any financial account number, or any data that enables access to a customer's account, or other identifying information of any person which any Defendant obtained prior to entry of this Order in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any of the Defendants; provided that Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

17

**VIII.  ASSET FREEZE**

**IT IS FURTHER ORDERED** that Asset Freeze Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons or entities directly or indirectly under the control of any of them, including any Financial Institution, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order are hereby temporarily restrained and enjoined from directly or indirectly:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets, or any interest therein, wherever located, including outside the United States, that are:

1.      Asset Freeze Accounts;

2.      owned or controlled, directly or indirectly, by any Asset Freeze Defendant, in whole or in part, or held, in whole or in part, for the benefit of any Asset Freeze Defendant;

3.      in the actual or constructive possession of any Asset Freeze Defendant;

4.      owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Asset Freeze Defendant, including any entity acting under a fictitious name owned by or controlled by any Asset Freeze Defendant, and any Assets held by, for, or under the name of any Asset Freeze Defendant at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, payment processing company, precious metal dealer, or other Financial Institution or depository of any kind;

B.      Opening or causing to be opened any safe deposit boxes titled in the name of any Asset Freeze Defendant (including, without limitation, Defendant Caldaronello's J.P. Morgan Chase safe deposit box no. 10000001125574);

C.      Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Asset Freeze Defendant;

D.      Obtaining a personal or secured loan;

E.      Incurring liens or encumbrances on real property, personal property or other Assets in the name, singly or jointly, of any Asset Freeze Defendant; and

F.      Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Asset Freeze Defendant.

**IT IS FURTHER ORDERED** that the Assets affected by this Section shall include:  (1) all Assets of Asset Freeze Defendants as of the time this Order is entered; and (2) for Assets obtained after the time this Order is entered, those Assets of Asset Freeze Defendants that are derived, directly or indirectly, from the Defendants' activities as described in the Commission's Complaint.

## IX.   RETENTION  OF ASSETS AND DOCUMENTS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a preliminary injunction, any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or Relief Defendant, or other party subject to Section VIII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset, shall:

A.      Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge,

hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, document, electronically stored information, or asset held by or under such entity's or person's control, except as directed by further order of the Court;

B.     Provide the FTC and the FTC's agents immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of Defendants or Relief Defendant for forensic imaging;

C.     Deny access to any safe deposit boxes that are either titled in the name, individually or jointly, or subject to access by, any Defendant, Relief Defendant, or other party subject to Section VIII above; and

D.     Provide to counsel for the FTC, within one (1) business day, a sworn statement setting forth:

1.     the identification of each account or asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, Relief Defendant, or other party subject to Section VIII above, whether in whole or in part;

2.     the balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served;

3.     the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant or Relief Defendant, or other party subject to Section VIII above, whether in whole or in part; and

4.     if the account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other asset was remitted;

5.      Provide counsel for the FTC, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to:  account statements, account applications, signature cards, checks, deposit tickets, transfers to and from the accounts, wire transfers, all other debit and credit instruments or slips, 1099 forms, and safe deposit box logs; and

6.      Cooperate with all reasonable requests of the FTC relating to this Order's implementation.

**IT IS FURTHER ORDERED** that the accounts subject to this provision include (a) all assets of each Defendant or Relief Defendant deposited as of the time this Order is entered, and (b) those assets deposited after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that, in addition to the information and documents required to be produced pursuant to other provisions herein, the FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, Relief Defendant, or other party subject to Section VIII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset, and such financial or brokerage institution, business entity, electronic data host or person shall respond to such subpoena within three (3) business days after service.  The FTC may effect service by electronic mail.

## X.   APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that McNamara Benjamin LLP is appointed Temporary Receiver for the Receivership Defendants, with the full power of an equity Receiver.  The Temporary Receiver shall be the agent of this Court and solely the agent of this Court in acting as Temporary Receiver under this Order. The Temporary Receiver shall be accountable directly to this Court.  The Temporary Receiver shall comply with all local rules and laws governing federal equity receivers.

## XI.   COOPERATION WITH THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Defendants and Relief Defendant shall fully cooperate with and assist the Temporary Receiver.  Defendants' and Relief Defendant's cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order; providing any login, password, or biometric identifier required to access any computer or electronic files or information in or on any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver. Defendants and Relief Defendant are hereby restrained and enjoined from directly or indirectly:

A.   Transacting any of the business of the Receivership Defendants;

B.   Excusing debts owed to the Receivership Defendants;

C.   Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants;

D.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or

in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Temporary Receiver;

E.     Failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of any Assets within the receivership estate that the Receiver or the FTC has identified; or

F.     Doing any act or thing whatsoever to interfere with the Temporary Receiver's taking and keeping custody, control, possession, or managing of the Assets or documents subject to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or documents of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

## XII. **DUTIES AND AUTHORITY OF TEMPORARY RECEIVER**

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Defendants by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Defendant from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Defendant, wherever situated.  The Temporary Receiver shall have full power to divert mail and to sue for, collect, receive, take possession of, hold, and manage all Assets and Documents of the Receivership Defendants and other

persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants;

C.     Take all steps necessary to secure the business premises of the Receivership Defendants, which may include, but are not limited to, taking the following steps as the Temporary Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording all portions of the location; (5) changing the locks and disconnecting any computer networks or other means of access to electronically stored information or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receivers with proof of identification, and/or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendants.  Such authority shall include, but not be limited to, the authority to order any owner, director, or officer of the Receivership Defendants to leave the business premises;

D.     Conserve, hold, and manage all receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the Assets and preventing the transfer, withdrawal, or misapplication of Assets;

E.     Enter into contracts and purchase insurance as advisable or necessary;

F.      Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.      Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.      Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities;

I.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

J.      Collect any money due or owing to the Receivership Defendants;

K.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants, or to carry out the Temporary Receiver's mandate under this Order;

L.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Defendants or the Temporary Receiver that the Temporary Receiver deems necessary and advisable to preserve

the Assets of the Receivership Defendants, or to carry out the Temporary Receiver's mandate under this Order;

M.     Continue and conduct the businesses of the Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the Assets of the receivership estate, and lawfully, if at all;

N.     Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order.  Subpoenas may be served by electronic mail, by agents or attorneys of the Temporary Receiver and by agents of any process server retained by the Temporary Receiver;

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account; and

P.     Maintain accurate records of all receipts and expenditures made by the Temporary Receiver.

## XIII.  <u>TRANSFER OF FUNDS TO THE TEMPORARY RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES</u>

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of counsel for the FTC and the Temporary Receiver relating to implementation of this Order, including transferring funds at the Temporary Receiver's direction and producing records related to the Assets and sales of the Receivership Defendants.

26

## XIV.  **TEMPORARY RECEIVER'S REPORTS**

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court on or before the date set for the hearing regarding the Preliminary Injunction, regarding:  (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to: (a) prevent any diminution in the value of Assets of the Receivership Defendants; (b) pursue receivership Assets from third parties; and (c) adjust the liabilities of the Receivership Defendants, if appropriate; and (5) any other matters which the Temporary Receiver believes should be brought to the Court's attention.  Provided, however, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership Assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

## XV.  **COMPENSATION OF THE TEMPORARY RECEIVER**

**IT IS FURTHER ORDERED** that the Temporary Receiver, and all persons or entities retained or hired by the Temporary Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Temporary Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by Section XIV.  The Temporary Receiver shall not increase the fees or

rates used as the bases for such fee applications without prior approval of the Court.

## XVI. TEMPORARY RECEIVER'S ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.     The Temporary Receiver, and his representatives, agents, and assistants, shall have immediate access to all business premises and storage facilities, owned, controlled, or used by any Receivership Defendant, including but not limited to the offices and facilities at 23161 Mill Creek Drive, Suite 230, Laguna Hills, California 92653; at 2280 University Drive, Suite 101, Newport Beach, California, 92660; and any offsite commercial mail boxes used by any Receivership Defendant.  The Temporary Receiver is authorized to employ the assistance of law enforcement as he deems necessary to effect service and peacefully implement this Order.  The Temporary Receiver may exclude Receivership Defendants and their employees from part or all of the business premises during the immediate access.  The purpose of the immediate access shall be to effect service and to inspect and copy the business and financial records of the Receivership Defendants, including forensic imaging of electronically stored information.  Such business records include, but are not limited to, correspondence, contracts, emails, and financial data.

B.     The Temporary Receiver and its representatives, agents, and assistants, shall have the right to remove materials from the above-listed premises for inspection, and copying.

C.     Receivership Defendants and all employees or agents of Receivership Defendants shall provide the Temporary Receiver with any necessary means of access to documents and records, including, without limitation, the locations of the

Receivership Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information.

D.     If any documents, computers, or electronic data storage devices containing information related to the business practices or finances of the Receivership Defendant are at a location other than those listed herein, including but not limited to, the personal residence(s) of the Defendants, then, immediately upon notice of this Order, Defendants shall produce to the Temporary Receiver all such documents, computers, or electronic data storage devices.  To prevent the destruction of electronic data, upon service of this Order upon Receivership Defendant(s), any computers or electronic data storage devices containing such information shall be powered down (turned off) in the normal course for the operating systems used on such devices and shall not be used until produced for copying and inspection, along with any codes needed for access.

E.     FTC representatives may attend the immediate access for the purposes identified herein; however, FTC representatives may only attend with the Temporary Receiver's consent, and under the Temporary Receiver's supervision.

## XVII.     PARTIES' ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall allow the FTC, the Defendants, and their representatives reasonable access to the premises of the Receivership Defendants.  The purpose of this access shall be to inspect, inventory, and copy any documents and other property owned by, or in the possession of, the Defendant, provided that those documents and property are not removed from the premises without the permission of the Temporary Receiver. The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.  If the Temporary Receiver permits the FTC to take initial forensic images of receivership data during the immediate

access (or at any other time), the Temporary Receiver must:  (1) supervise the FTC's forensic imaging; (2) have a qualified forensic professional onsite during the imaging to ensure the integrity of the images the FTC takes; (3) retain a copy of the data; and (4) provide any Defendant a copy upon request.

## XVIII.        BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that, in light of the appointment of the Temporary Receiver, the Receivership Defendants are hereby prohibited from filing petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

## XIX.  MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED** that:

A.      Nothing herein modifies any existing Order in any way, including the Orders governing Defendant Pacios and nonparty Assurity Law Group.  *See FTC v. Lakhany*, No. SACV 12-00337.  The FTC may take discovery and pursue other measure any existing Order permits.

B.      The FTC may obtain credit reports concerning any Defendant or Relief Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

C.      If Defendants Pacios, Caldaronello, Nelson, or Moreira possess a smartphone or tablet on receivership premises, such Defendants will turn over the device to the Receiver for imaging.  Within two business days, the Temporary Receiver will return the device, provide them with a copy of the data imaged, provide the FTC with a copy, and retain a copy.  The Temporary Receiver may request that the FTC conduct the imaging, but only under the Temporary Receiver's supervision.

D.     If the Temporary Receiver has cause to believe that any Individual Defendant with a smartphone or tablet has used that device in part for business purposes related to Mortgage Assistance Relief Products or Services or Telemarketing, and the device is located on receivership premises, the Individual Defendant will turn over the device to the Temporary Receiver for imaging. Within two business days, the Receiver will return the device to the Individual Defendant, provide the Individual Defendant with a copy, provide the FTC with a copy, and retain a copy.  The Temporary Receiver may request that the FTC conduct the imaging, but only under the Temporary Receiver's supervision.

E.     Pending further order of this Court, no Individual or Relief Defendant has any obligation to disclose, produce, or turn over the contents of any safe (in his or her residence) the Corporate Defendants purchased with corporate assets paid directly from an Asset Freeze Account to a safe retailer.  However, also pending further order of this Court, any Individual or Relief Defendant may not access, remove, dissipate, or otherwise disturb the contents of any such safe.

F.     No Individual or Relief Defendant is obligated to disclose or produce contents they are able to control or access on any social media platform (including, without limitation, Facebook, Twitter, Instagram, Pinterest, and LinkedIn), except as they may be obligated to disclose such material pursuant to the Orders governing Defendant Pacios and nonparty Assurity Law Group, *see FTC v. Lakhany*, No. SACV 12-00337, or after the Court authorizes discovery that may encompass such material in this action.  However, no Individual or Relief Defendant may destroy or delete such material.

31

**XX.** **STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during the pendency of the Temporary Receivership ordered herein, the Receivership Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Receivership Defendant, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees be and are hereby stayed from:

1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Temporary Receiver's taking custody, control, possession, or management of the Assets or Documents subject to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive

jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

　　　　B.　　This Section does not stay:

　　　　　　1.　　The commencement or continuation of a criminal action or proceeding;

　　　　　　2.　　The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

　　　　　　3.　　The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power, including but not limited to any actions (including discovery) taken by the FTC in enforcing the Orders in the related matter, *FTC v. Lakhany, et al.*, No. SACV 12-00337; or

　　　　　　4.　　The issuance to the Receivership Defendants of a notice of tax deficiency.

## XXI.　ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

　　　　**IT IS FURTHER ORDERED** that each Defendant and Relief Defendant, within three (3) business days of receipt of this Order, must submit to counsel for the FTC a truthful sworn statement acknowledging receipt of this Order.

## XXII.　CORRESPONDENCE WITH PLAINTIFF

　　　　**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent via electronic submission and Federal Express to:

　　　　　　Jonathan Cohen
　　　　　　Miriam Lederer

Federal Trade Commission
600 Pennsylvania Ave., NW, Mail Drop CC-9528
Washington, DC 20580
Telephone: (202) 326-2551, -2975
Fax: (202) 326-3197
Jcohen2@ftc.gov, mlederer@ftc.gov

## XXIII. <u>SERVICE OF THIS ORDER</u>

**IT IS FURTHER ORDERED** that this Order shall be personally served on the Defendants.  Service shall be initiated by April 17, 2015.

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile, email, hand-delivery, personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, upon any Financial Institution or other entity or person that may have possession, custody, or control of any documents or assets of any Defendant or Relief Defendant, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any Financial Institution shall effect service upon the entire Financial Institution.

## XXIV. <u>PRELIMINARY INJUNCTION HEARING</u>

**IT IS FURTHER ORDERED**, pursuant to Fed. R. Civ. P. 65(b), that each of the Defendants shall appear before this Court on the 30th day of April, 2015, at 9 o'clock a.m., at the United States District Courthouse, Courtroom 9B, Santa Ana, California, to show cause, if there is any, why this Court should not enter a preliminary injunction enjoining the violations of law alleged in the FTC's Complaint, continuing the freeze of their assets, and imposing such additional relief as may be appropriate.

**IT IS FURTHER ORDERED** that the Defendants shall file with the Court and serve on the FTC's counsel any answering pleadings, affidavits, motions, expert reports, declarations, witness lists with detailed summaries of expected witness testimony, and/or legal memoranda, no later than five days prior to the

hearing.  The FTC may file responsive or supplemental pleadings, materials, affidavits, witness lists with detailed summaries of expected witness testimony, and/or memoranda with the Court and serve them on Defendants' counsel no later than two days prior to that hearing.  Such affidavits, pleadings, motions, expert reports, declarations, witness lists with detailed summaries of expected witness testimony, legal memoranda and/or oppositions must be served by electronic mail (or Federal Express, if electronic mail is impractical), and must be received by the other party no later than the deadlines set forth in this Section.

## XXV. <u>UNDER SEAL</u>

**IT IS FURTHER ORDERED** that the seal in this case shall dissolve on April 20, 2015.

## XXVI.  <u>DURATION OF ORDER</u>

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on the 30th day of April, 2015, at 10:30 o'clock a.m., unless within such time the Order, for good cause shown, is extended for an additional period not to exceed fourteen (14) calendar days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

## XXVII.  <u>RETENTION OF JURISDICTION</u>

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

//
//
///
//

**IT IS SO ORDERED**, this 16th day of April, 2015, at 10:30 AM, Pacific Standard Time.

Dated: April 16, 2015

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE