**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FEDERAL TRADE COMMISSION,

        Plaintiff,

        v.

DENNY LAKE, *et al.*

Case No.  SACV 15-00585-CJC(JPRx)

**UNOPPOSED PRELIMINARY INJUNCTION ORDER WITH ASSET FREEZE AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS C.C. ENTERPRISES, INC. AND D.N. MARKETING, INC.**

Judge: Hon. Cormac J. Carney
Courtroom 9B

Plaintiff Federal Trade Commission ("FTC") filed this action on April 13, 2015, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538.

On April 16, 2015, upon motion by the FTC, this Court issued an *ex parte* temporary restraining order ("TRO") with asset freeze, appointment of a Receiver, and other equitable relief.  On April 29, 2015, the Court granted an unopposed motion to extend the TRO with respect to corporate defendants C.C. Enterprises, Inc. and D.N. Marketing, Inc.  Neither C.C. Enterprises, Inc., nor D.N. Marketing, Inc., has obtained counsel or filed any response in advance of the Preliminary Injunction Hearing held on May 13, 2015, at 4:30 p.m.

## **FINDINGS OF FACT**

This Court, having considered the FTC's Complaint, *ex parte* application, declarations, exhibits, and memoranda filed in support of the FTC's application, and the supplemental briefing and evidence presented, finds that:

1.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto;

2.     There is good cause to believe that venue lies properly with this Court;

3.     As an agency of the United States, the FTC need not post a security

for the issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).

4.     There is good cause to believe that Defendants C.C. Enterprises, Inc., and D.N. Marketing, Inc., have engaged and are likely to continue to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), including but not limited to falsely and misleadingly representing, directly or indirectly, expressly or by implication that:

a.     Defendants will obtain mortgage modifications for consumers that will make their payments substantially more affordable, will substantially lower their interest rates, and/or will help them avoid foreclosure;

b.     A consumer's trial payments and/or reinstatement fee payment will be held in his or her lender's trust account and either be paid to his or her lender at the end of the trial period to finalize his or her modification, or be refunded;

c.     Defendants are affiliated with, endorsed or approved by, or otherwise associated with the United States government, Making Home Affordable ("MHA"), the Department of Housing and Urban Development ("HUD"), or the Neighborhood Assistance Corporation of America ("NACA");

d.     Defendants communicate with specialized departments, divisions, or "higher-ups" at the maker, holder, or servicer of the consumer's dwelling loan;

e.     The consumer's lender can no longer foreclose on the consumer's house after Defendants receive signed documents and the first payment from the consumer;

f.     Defendants typically deliver a loan modification within several months.

5.     There is good cause to believe that Defendants C.C. Enterprises, Inc., and D.N. Marketing, Inc. have engaged and are likely to continue to engage in acts

or practices that violate the MARS Rule, 12 C.F.R. Part 1015, including but not limited to:

       a.    Misrepresenting, expressly or by implication, material aspects of any mortgage assistance relief services, in violation of the MARS Rule; 12 C.F.R. § 1015.3(b);

       b.    Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of the MARS Rule; 12 C.F.R. § 1015.3(a);

       c.    Failing to make disclosures in all general and consumer-specific commercial communications as required by the MARS Rule; 12 C.F.R. § 1015.4(a)-(c);

       d.    Asking for or receiving payment of any fee or other consideration before a consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's loan holder or servicer in violation of the MARS Rule; 12 C.F.R. § 1015.5(a);

6.    There is good cause to believe that Defendants C.C. Enterprises, Inc., and D.N. Marketing, Inc. have engaged and are likely to continue to engage in acts or practices that violate the TSR, 16 C.F.R. Part 310, including but not limited to:

       a.    In connection with the telemarketing of Defendants' services, misrepresenting, directly or indirectly, expressly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of such services, in violation of the TSR; 16 C.F.R. § 310.3(a)(2)(iii);

       b.    In connection with the telemarketing of Defendants' services, misrepresenting, directly or indirectly, expressly or by implication, material

aspects of the nature or terms of Defendants' refund, cancellation, exchange, or repurchase policies, in violation of the TSR; 16 C.F.R. § 310.3(a)(2)(iv);

       c.    In connection with the telemarketing of Defendants' services, asking for or receiving payment of any fee or other consideration in advance of obtaining a loan or other extension of credit after representing a high likelihood of success in obtaining or arranging a loan or other extension of credit to consumers, in violation of the TSR; 16 C.F.R. § 310.4(a)(4);

7.    There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act, MARS Rule, and the TSR unless Defendants are restrained and enjoined by Order of this Court;

8.    Good cause exists for permitting the FTC to take limited expedited discovery from third parties as to the existence and location of assets and Documents;

9.    There is good cause to believe that an Order is necessary to prohibit immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains that could occur if they transferred, dissipated, or concealed their assets or business records; and

10.    Weighing the equities and considering the FTC's likelihood of ultimate success, this Order is in the public interest.

## <u>DEFINITIONS</u>

For the purposes of this Preliminary Injunction, the following definitions apply:

A.    **"Assets"** means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Defendants, or held for the benefit of Defendants, wherever located, whether in the United States or abroad, including

but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), shares of stock, futures, all cash or currency, and trusts, including but not limited to a trust held for the benefit of any Defendant, and shall include both existing assets and assets acquired after the date of entry of this order, or any interest therein.

B.    "**Asset Freeze Accounts**" are accounts that are (1) associated with Defendants and (2) are maintained at Bank of America with an account number ending in "6164"; are maintained at Bank of America with an account number ending in "4546"; are maintained at Bank of America with an account number ending in "3352"; are maintained at Comerica Bank with an account number ending in "2545"; are maintained at Comerica Bank with an account number ending in "6298"; are maintained at Comerica Bank with an account number ending in "2594"; are maintained at Comerica Bank with an account number ending in "6132"; are maintained at Comerica Bank with an account number ending in "8381"; are maintained at Comerica Bank with an account number ending in "8344"; are maintained at Comerica Bank with an account number ending in "8707"; are maintained at Comerica Bank with an account number ending in "3367"; are maintained at Comerica Bank with an account number ending in "5726"; are maintained at Comerica Bank with an account number ending in "8882"; are maintained at Comerica Bank with an account number ending in "6561"; are maintained at Comerica Bank with an account number ending in "6320"; are maintained at Farmers & Merchants Bank with an account number ending in "1538"; are maintained at JP Morgan Chase with an account number ending in "1963"; are maintained at JP Morgan Chase with an account number ending in "0038"; are maintained at JP Morgan Chase Bank with an

account number ending in "4854"; are maintained at JP Morgan Chase Bank with an account number ending in "6050"; are maintained at JP Morgan Chase Bank with an account number ending in "6529"; are maintained at JP Morgan Chase Bank with an account number ending in "6636"; are maintained at JP Morgan Chase Bank with an account number ending in "9414"; are maintained at JP Morgan Chase Bank with an account number ending in "0647"; are maintained at JP Morgan Chase Bank with an account number ending in "9828"; are maintained at JP Morgan Chase Bank with an account number ending in "9215"; are maintained at JP Morgan Chase Bank with an account number ending in "0618"; are maintained at JP Morgan Chase Bank with an account number ending in "1855"; are maintained at JP Morgan Chase Bank with an account number ending in "2920"; are maintained at JP Morgan Chase Bank with an account number ending in "6320"; are maintained at JP Morgan Chase Bank with an account number ending in "2666"; are maintained at Wells Fargo Bank with an account number ending in "2347"; are maintained at Wells Fargo Bank with an account number ending in "6854"; are maintained at Wells Fargo Bank with an account number ending in "9082"; or are maintained at Wells Fargo Bank with an account number ending in "1575."

C.    **"Assisting others"** includes but is not limited to:  (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communications; (3) formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet

websites, affiliate marketing services, or media placement services; (4) providing names of, or assisting in the generation of, potential customers; (5) performing or providing marketing, billing, or payment services of any kind; (6) acting or serving as an owner, officer, director, manager, or principal of any entity; or (7) providing telemarketing services.

D. **"Defendants"** means C.C. Enterprises, Inc. (also d/b/a HOPE Services, Trust Payment Center, and Retention Divisions), and D.N. Marketing, Inc. (also d/b/a HAMP Services and Trial Payment Processing), and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

E. **"Document"** is synonymous in meaning and equal in scope to the terms "document" and "electronically stored information," as described and used in Federal Rule of Civil Procedure 34(a)(1)(A).

F. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.

G. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

H. **"Mortgage assistance relief product or service"** means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1. stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.     negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.     obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.     negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

5.     obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.     negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, (iii) or any other disposition of a dwelling loan other than a sale to a third party that is not the dwelling loan holder. The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application and offering to provide or providing legal services, or offering to sell a consumer a plan or subscription to a service that provides such assistance.

I.    **"Receiver"** means Thomas McNamara of McNamara Benjamin LLP, the Temporary Receiver appointed by the Court in Section X of the TRO issued on April 16, 2015, as well as any subsequent receiver the Court appoints in this action. The term "Receiver" also includes any deputy receivers or agents as may be named by the Receiver.

J.    **"Person"** means any individual, group, unincorporated association, limited or general partnership, corporation or other business entity.

K.    **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

L.     **"Receivership Defendants"** means:  C.C. Enterprises, Inc. (also d/b/a HOPE Services, Trust Payment Center, and Retention Divisions); D.N. Marketing, Inc. (also d/b/a HAMP Services and Trial Payment Processing); any entity located at 23161 Mill Creek Drive, Suite 230, Laguna Hills, California 92653 that markets or provides any service that the Final Order in *FTC v. Lakhany*, No. 8:12-cv-337 (Feb. 28, 2013) prohibits Brian Pacios from marketing or providing; these entities' subsidiaries, affiliates, divisions, successors, and assigns.  "Receivership Defendants" include businesses that lack formal legal structure (such as businesses operating under fictitious business names), but that otherwise satisfy the definition of "Receivership Defendant."

M.     **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc).

N.     **"Telemarketing"** means a plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## I.     PROHIBITED REPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service or debt relief service, are restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.     That any Defendant or any other person typically will obtain for consumers mortgage loan modifications that will make consumers' payments

substantially more affordable, will substantially lower their interest rates, and/or will help them avoid foreclosure;

B.    That money from the consumer, including but not limited to trial payments and/or reinstatement fee payments, will be held in his or her lender's trust account and either be paid to his or her lender at the end of the trial period to finalize his or her modification, or be refunded;

C.    That any Defendant is affiliated with, endorsed or approved by, or otherwise associated with the United States government, the MHA program, HUD, or NACA;

D.    That any Defendant communicates with specialized departments, divisions or "higher ups" at the maker, holder, or servicer of a consumer's dwelling loan;

E.    That the consumer's lender can no longer foreclose on the consumer's house after any Defendant has received signed documents and a consumer's first payment; and

F.    That any Defendant can deliver a loan modification within any specific or general timeframe.

## II.    DISCLOSURES REQUIRED BY AND REPRESENTATIONS PROHIBITED BY THE MARS RULE

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service or debt relief service, are hereby restrained and enjoined from engaging in, or assisting others in engaging in, the following conduct:

A.      Misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, in violation of 12 C.F.R. § 1015.3(b);

B.      Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his lender or servicer, in violation of 12 C.F.R. § 1015.3(a);

C.      Failing to make the following disclosure in all general and consumer-specific commercial communications:  "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of 12 C.F.R. §§ 1015.4(a)(1) & 1015.4(b)(2);

D.      Failing to make the following disclosure in all general and consumer-specific commercial communications:  "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of 12 C.F.R. §§ 1015.4(a)(2) & 1015.4(b)(3);

E.      Failing to make the following disclosure in all consumer-specific commercial communications: "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of 12 C.F.R. § 1015.4(b)(1).  For the purposes of this subsection, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including but not limited to, all fees and charges; and

F.      Failing, in all general commercial communications, consumer-specific commercial communications, and other communications in cases where any Defendant or person has  represented, expressly or by implication, in connection

with the advertising, marketing, promotion, offering for sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, to place clearly and prominently, and in close proximity to any such representation the following disclosure:  "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of 12 C.F.R. § 1015.4(c).

## III.   ADVANCE FEE PROHIBITION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service or debt relief service, or in connection with telemarketing, are hereby restrained and enjoined from asking for, or receiving payment of, any fee or other consideration until a consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief the Defendants obtained on the consumer's behalf.

## IV.   PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED** that Defendants, and each of their successors, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service or debt relief service, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or

business and personal finances, of Defendants, or an entity directly or indirectly under the control of Defendants.

## V. DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONICALLY STORED INFORMATION

**IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them, (1) any person hosting any Internet website, server, or "cloud-based" electronic storage for, or on behalf of, any Defendant, and (2) Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall:

A.      Immediately take all necessary steps to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, and containing statements or representations prohibited by Sections I and II of this Order cannot be accessed by the public; and

B.      Prevent the alteration, destruction or erasure of any (1) Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, by preserving such websites in the format in which they are maintained currently, and (2) any electronically stored information stored on behalf of Defendants, or entities in active concert or participation with any of them.

## VI. SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED** that any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, and containing statements or representations prohibited by Sections I and II of this Order and provide immediate notice to

counsel for the FTC and the Receiver of any other Internet domain names registered by Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise.

## VII.   PROHIBITION ON USE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and Defendants' officers, agents, directors, servants, employees, salespersons, and attorneys, as well as all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, Social Security number, credit card number, debit card number, bank account number, any financial account number, or any data that enables access to a customer's account, or other identifying information of any person which any Defendant obtained prior to entry of this Order in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any of the Defendants; provided that Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## VIII.  ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons or entities directly or indirectly under the control of any of them, including any Financial Institution, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order are hereby restrained and enjoined from directly or indirectly:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets, or any interest therein, wherever located, including outside the United States, that are:

1.     Asset Freeze Accounts;

2.     owned or controlled, directly or indirectly, by any Defendant, in whole or in part, or held, in whole or in part, for the benefit of any Defendant;

3.     in the actual or constructive possession of any Defendant;  or

4.     owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, including any entity acting under a fictitious name owned by or controlled by any Defendant, and any Assets held by, for, or under the name of any Defendant at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, payment processing company, precious metal dealer, or other Financial Institution or depository of any kind;

B.     Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant;

C.     Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant;

D.     Obtaining a personal or secured loan;

E.     Incurring liens or encumbrances on real property, personal property or other Assets in the name, singly or jointly, of any Defendant; and

F.     Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

**IT IS FURTHER ORDERED** that the Assets affected by this Section shall include:  (1) all Assets of Defendants as of the time the TRO was entered; and (2) for Assets obtained after the entry of the TRO, those Assets of Defendants that are derived, directly or indirectly, from the Defendants' activities as described in the Commission's Complaint, filed on April 13, 2015.

## IX.   RETENTION  OF ASSETS AND DOCUMENTS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, or other party subject to Section VIII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset, shall:

A.      Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, document, electronically stored information, or asset held by or under such entity's or person's control, except as directed by further order of the Court;

B.      Provide the FTC and the FTC's agents immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of Defendants for forensic imaging;

C.      Deny access to any safe deposit boxes that are either titled in the name, individually or jointly, or subject to access by, any Defendant, or other party subject to Section VIII above; and

D.     Provide to counsel for the FTC, within five (5) business days after being served with a copy of this Order, a sworn statement setting forth:

1.     the identification of each account or asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, or other party subject to Section VIII above, whether in whole or in part;

2.     the balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served;

3.     the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant, or other party subject to Section VIII above, whether in whole or in part; and

4.     if the account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other asset was remitted;

E.  Provide counsel for the FTC, within five (5) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to:  account statements, account applications, signature cards, checks, deposit tickets, transfers to and from the accounts, wire transfers, all other debit and credit instruments or slips, 1099 forms, and safe deposit box logs; and

F.  Cooperate with all reasonable requests of the FTC relating to this Order's implementation.

**IT IS FURTHER ORDERED** that the accounts subject to this provision include (a) all assets of each Defendant deposited as of the time the TRO was

entered on April 16, 2015, at 10:30 a.m. Pacific Standard Time, and (b) those assets deposited after entry of the TRO that are derived from the actions alleged in Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that, in addition to the information and documents required to be produced pursuant to other provisions herein, the FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, or other party subject to Section VIII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset, and such financial or brokerage institution, business entity, electronic data host or person shall respond to such subpoena within three (3) business days after service.  The FTC may effect service by electronic mail.

## X.   APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Thomas McNamara of McNamara Benjamin LLP, the Temporary Receiver named in Section X of the TRO, is appointed Receiver for the Receivership Defendants, with the full power of an equity Receiver.  The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with all local rules and laws governing federal equity receivers.

## XI.   COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall fully cooperate with and assist the Receiver.  Defendants' cooperation and assistance shall include, but

not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any login, password, or biometric identifier required to access any computer or electronic files or information in or on any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.  Defendants are hereby restrained and enjoined from directly or indirectly:

    A.    Transacting any of the business of the Receivership Defendants;

    B.    Excusing debts owed to the Receivership Defendants;

    C.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants;

    D.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

    E.    Failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of any Assets within the receivership estate that the Receiver or the FTC has identified; or

    F.    Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the Assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

## XII.  TRANSFER OF FUNDS TO THE RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of counsel for the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction.

## XIII. RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court on or before July 13, 2015 regarding:  (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Receiver intends to take in the future to: (a) prevent any diminution in the value of Assets of the Receivership Defendants; (b) pursue receivership Assets from third parties; and (c) adjust the liabilities of the Receivership Defendants, if appropriate; and (5) any other matters which the Receiver believes should be brought to the Court's attention.  Provided, however, if any of the required information would hinder the Receiver's ability to pursue receivership Assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.  Further provided, however, that if the remaining non-stipulating Defendants in this action subsequently stipulate to a Preliminary Injunction (or a Preliminary Injunction is otherwise entered against the remaining non-stipulating Defendants), and the Receiver has not already submitted the Report this section requires, then the Receiver shall report to this Court regarding the matters herein within fourteen days of the last Preliminary Injunction entered.

**XIV.  BANKRUPTCY PETITIONS**

  **IT IS FURTHER ORDERED** that, in light of the appointment of the Receiver, the Receivership Defendant is hereby prohibited from filing petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

**XV.  MISCELLANEOUS PROVISIONS**

  **IT IS FURTHER ORDERED** that:

  A. Nothing herein modifies any existing Order in any way, including the Orders governing Defendant Pacios and nonparty Assurity Law Group.  *See FTC v. Lakhany*, No. SACV 12-00337.  The FTC may take discovery and pursue other measures any existing Order permits.

  B. The FTC may obtain credit reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

**XVI.  ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS**

  **IT IS FURTHER ORDERED** that each Defendant within five (5) business days of receipt of this Order, must submit to counsel for the FTC a truthful sworn statement acknowledging receipt of this Order.

## XVII.  <u>CORRESPONDENCE WITH PLAINTIFF</u>

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent via electronic submission or Federal Express to:

> Jonathan Cohen
> Miriam Lederer
> Federal Trade Commission
> 600 Pennsylvania Ave., NW, Mail Drop CC-9528
> Washington, DC 20580
> Telephone: (202) 326-2551, -2975
> Fax: (202) 326-3197
> Jcohen2@ftc.gov, mlederer@ftc.gov

## XVIII. <u>SERVICE OF THIS ORDER</u>

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile, email, personal or overnight delivery, U.S. Mail, or hand-delivery, by agents and employees of the FTC or the Receiver, any state or federal law enforcement agency, or by private process server, upon any Defendant, Financial Institution or other entity or person that may have possession, custody, or control of any documents or assets of any Defendant, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any Financial Institution shall effect service upon the entire Financial Institution.

## XIX.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this 13th day of May, 2015.


Dated: May 13, 2015                                        _____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE