1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

3        **HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

4

FEDERAL TRADE COMMISSION,              )

5                                       )
                        Plaintiff,      )

6                                       )
          vs.                           )   Case No.

7                                       )   8:15–cv–00585–CJC–JPR
DENNY LAKE, et al.,                     )

8                                       )
                        Defendants.     )

9   _____)

10

11

12

13                  REPORTER'S TRANSCRIPT OF
              HEARING ON PRELIMINARY INJUNCTION

14                   WEDNESDAY, MAY 13, 2015
                          4:36 P.M.

15                   SANTA ANA, CALIFORNIA

16

17

18

19

20

21

22   _____

              **DEBBIE HINO–SPAAN, CSR 7953, CRR**

23           FEDERAL OFFICIAL COURT REPORTER

             411 WEST FOURTH STREET, ROOM 1-191

24           SANTA ANA, CALIFORNIA 92701-4516

                  dhinospaan@yahoo.com

25

                    **UNITED STATES DISTRICT COURT**

1    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         FEDERAL TRADE COMMISSION
          BUREAU OF CONSUMER PROTECTION
5         BY:  JONATHAN COHEN, ESQ.
               MIRIAM R. LEDERER, ATTORNEY AT LAW
6         600 Pennsylvania Avenue N.W.
          Mailstop CC-9528
7         Washington, DC 20580
          (202) 326-2551

8

     **FOR THE DEFENDANT DENNY LAKE:**

9

          BORCHARD & CALLAHAN
10        BY:  THOMAS J. BORCHARD, ESQ.
               JANELLE M. DEASE, ATTORNEY AT LAW
11             SABRINA C. NARAIN, ATTORNEY AT LAW
          25909 Pala
12        Suite 300
          Mission Viejo, California 92691
13        (949) 457-9505

14   **THE RECEIVER:**

15        McNAMARA BENJAMIN LLP
          BY:  THOMAS W. McNAMARA, ESQ.
16        501 West Broadway
          Suite 2020
17        San Diego, California 92101
          (619) 269-0400

18

19

20

21

22

23

24

25

1          **SANTA ANA, CALIFORNIA; WEDNESDAY, MAY 13, 2015**

2                **4:36 P.M.**

3                 **- - -**

4         THE COURTROOM DEPUTY:  Calling Item No. 1,

04:36PM 5  SACV 15-585, Federal Trade Commission v. Denny Lake, et al.

6        Counsel, please state your appearances.

7         MR. COHEN:  Good afternoon, Your Honor.  Jonathan

8  Cohen for the Federal Trade Commission.  With me is my

9  co-counsel, Miriam Lederer.

04:36PM 10       THE COURT:  Good afternoon to both of you.

11        MR. BORCHARD:  Good afternoon, Your Honor.  Tom

12  Borchard of Borchard & Callahan for the defendant, Mr. Lake,

13  who is present.  Also present from my office is Janelle Dease

14  and Sabrina Narain.

04:36PM 15       THE COURT:  Good afternoon.

16        MR. McNAMARA:  Good afternoon, Your Honor.  Tom

17  McNamara.  I'm your receiver.  I'm here to answer questions,

18  but I don't plan to participate.

19        MR. COHEN:  How would the Court like to proceed?

04:36PM 20       THE COURT:  Well, let me state what I understand is

21  the parties' position, because I read the joint stipulation

22  that there was going to be no further evidence presented this

23  afternoon; correct?

24        MR. COHEN:  Correct.

04:37PM 25       THE COURT:  And that the parties are going to submit

on the evidence that was presented in the briefs as well as --

on the Order to Show Cause why a preliminary injunction

shouldn't be issued as well as all the papers in evidence that

was submitted in connection with the TRO as well as the

04:37PM 5   preliminary report by the receiver; correct?

MR. COHEN:  Correct.

THE COURT:  And so what I understood is now this was

going to be more like argument from both sides based on that

evidence; correct?

04:37PM 10   MR. COHEN:  Yes, Your Honor.

THE COURT:  All right.  So I'm doing well so far.

As I understand it from the papers, there's two issues that

Mr. Lake is contesting and objecting.  One is -- and they're

defined very generally.  One is, did he provide substantial

04:38PM 15   assistance within the meaning of the law.  And when I look at

what was submitted to me and what's presented before me, I

realize this is a preliminary injunction proceeding.  It's not

a final findings.

But based on what's been presented to me, my strong sense

04:38PM 20   is that he did substantially assist and support the fraud.  And

particularly he facilitated payments.  He responded and

pacified consumers who were expressing concern about their

money, and they thought the loan modification was already

approved.  He prepared consumers for court hearings.  He

04:38PM 25   shielded Pacios and Caldaronello from contact by consumers.  He

alerted Pacios and Caldaronello and other defendants to
problematic victims that needed to be pacified and addressed.
And he never told consumers that their payments would not go to
lenders.  That's my initial thoughts.  I wanted to be candid so
04:39PM 5  Mr. Borchard knows where I'm coming from on that issue.

6       The second issue, as I see it, was whether the asset
freeze as to Mr. Lake is fair, necessary and appropriate.  And
obviously I take issuing asset freezes and TROs and preliminary
injunctions very seriously, because I realize if there's a
04:39PM 10  violation of that TRO injunction, there are serious
consequences that I have to back up with the law, which,
including finding people in contempt and maybe putting them in
custody.  And I've done so.  And I don't want to do that,
especially in a civil proceeding.  But the law is what the law
04:40PM 15  is, and I take that very seriously.

16      But based on what the evidence has presented to me, I
believe the asset freeze, it is broad, I will admit that.  But
I don't think it's overly broad in light of the estimated
consumer loss, which is in the millions of dollars, which I
04:40PM 20  gather from the receiver's report and from what was presented
to me on the TRO.  I believe that liability is joint and
several under the federal statutes that the FTC is going under.
I believe that the assets that have been seized not only of
Mr. Lake but of the other defendants, unfortunately and
04:40PM 25  tragically, it's just going to cover a fraction of the

1    estimated consumer loss.

2        I do recognize that Mr. Lake has to live and survive.  And

3    if he has other sources of income and makes sources of income

4    so that he could repay credit, I fully intend to allow him to

04:41PM 5    do that.  But until he shows me that he has this other income

6    stream that he could pay credit, I'm not at this point inclined

7    to do that.  But I can, at any time with the necessary showing,

8    make the necessary modifications that are appropriate.

9            MR. COHEN:  Your Honor, in light of those remarks,

04:41PM 10   the FTC will reserve the balance, preserve its time and turn it

11   over to the defendant.

12            THE COURT:  Okay.

13            MR. BORCHARD:  Your Honor, I appreciate your

14   tentative thoughts on this.  And I'll try to be as brief as

04:42PM 15   possible, and I will try, as I'm sure the Court wants, that I

16   don't recite or reiterate what's already in the papers before

17   you.

18        I understand that the threshold for substantial assistance

19   is low.  I understand.  And I could sit here all day and argue

04:42PM 20   with Your Honor about how Mr. Lake did not substantially

21   assist, given the fact that he was paid $800 out of the 4300

22   that was paid to do the work on these files.  And unlike many

23   of these loan modification cases that I've been involved in, I

24   look very closely at the consumer arguments and complaints.

04:42PM 25   And the majority in this case seem to fall in light of those

related to "You took my payments" -- I'm Mr. Lake -- "You took

my payments, and you told me they were going for trial mod

payments."

Now I know the other defendants that are not here today

stipulated.  And if I was standing in their shoes and I was

representing them, I would tell them immediately to stipulate

and beg for mercy down the road.  Because what they were doing

in light of what the receiver and counsel has presented, it was

egregious conduct.

What I don't see from the consumers here, and again, I

understand substantial assistance, I don't see consumers

saying, "Nothing was done on my file."  I don't hear the

situation where the $800 went over to Mr. Lake's pocket and he

ran off and he enjoyed dinners, Vegas.  He and his team did the

work on these files and, from what I understand, had a very

high rate of success.

The Court can say to me, "Who cares if it's a violation of

the MARS.  It really doesn't matter."  I guess the reason I

raise those to Your Honor is that it does lead me into the

breadth of the preliminary or the asset freeze.

THE COURT:  Before you go there, though, let me

respond, because I hear you loud and clear.  And I recognize

that this is a hearing on a preliminary injunction, not a final

permanent injunction, not final on the merits.  And I'm a big,

big believer in due process, and I welcome and appreciate the

opportunity to have a full evidentiary record.  But

unfortunately -- or fortunately, however you want to look at

it, the law requires that I make a decision on a preliminary

basis, which I think, as you recognize, is a low standard.

04:44PM       And I also, when I look at the evidence that's before me,

taking into context it's at a preliminary injunction stage, I

do see Mr. Lake trying to do something favorable and beneficial

for the consumers.  I hear you.  I recognize that.  But I also,

when I look at all the evidence before me on this preliminary

04:45PM injunction, an argument can be made that they were using

Mr. Lake to provide some sort of legitimacy, some sort of cover

to their fraud.  They had to do something that was legitimate

to get these consumers to give these payments.

      And, you know, maybe arguably Mr. Lake had a very noble

04:46PM motivation or intent for doing what he did, but based on the

evidence that was presented to me, he clearly, from what I saw

without hearing his live testimony subject to

cross-examination, he was aware that those guys were up to no

good and were using him as part of a scheme to give at least a

04:46PM superficial face to the consumers that what we're doing is

legitimate.  Because from what I could gather, everything that

they did was not legitimate.

      So this scheme was going to crash and burn at the get-go

if they didn't have someone like Mr. Lake that could give some

04:46PM superficial, I guess, impression to the consumers, to the

public that, no, we're doing legitimate work trying to help

these consumers in distress from losing their homes.  And, you

know, this is wonderful work, what we're trying to do, but

there was, from what I could gather, downright

misrepresentation, despicable misrepresentations that were made

by Pacios and Caldaronello, if I said his name.

MR. BORCHARD:  Mr. Pacios.

THE COURT:  Pacios.  I should make a note of that.

So there's some of what you're saying I agree and I

recognize, and I want to make that clear.  But so you

understand where I'm coming from, it was because of that

legitimate, you know, beneficial work that Mr. Lake was doing,

that the scheme was allowed to go on for what it did.  Because

I can't see anything that Mr. Pacios and Mr. Caldaronello were

doing that was noble, altruistic, in the best interest of the

borrowers.

MR. BORCHARD:  I couldn't agree more.  And I doubt

the trips to Vegas were for the benefit of the homeowners.  And

for that, I believe those gentlemen deserve -- and apparently

there's a contempt hearing coming up on one of them who's done

it before.  I appreciate what the Court's saying.  Not only to

me, but I appreciate what the Court is saying to Mr. Lake, so

he does have an appreciation for what the Court said.

And speaking of evidence, I'm not asking for a

continuance, and I'm not arguing any type of -- I hate to use

04:49PM

04:49PM

04:49PM

04:49PM

04:50PM

1   the word "sandbag," but I received a reply on Monday.  And in

2   the reply, I'm looking at probably three inches of documents

3   that I've never seen before that was deemed new evidence.  And

4   I was going to start this out with a pitch to the Court that if

5   your tentative decision was based upon all the new evidence, I

6   was a little bit prejudiced.

7        And I'm not saying that they did this at the last minute

8   to say, "I got you."  I understand the receiver's been working

9   diligently to pull information together and diligently present

10  a report that apparently came this weekend.  And I received a

11  reply with just numerous amounts of documents that we haven't

12  even gotten through, but the ones I have, I guess I'm just

13  asking the Court if there's a significant amount of your

14  tentative that's based on all of the new evidence that was

15  submitted, I really haven't had a chance to process it.  I

16  really haven't had a chance to speak to Mr. Lake about it.

17       But if the Court is saying based upon the TRO and the

18  initial documents that were submitted in our opposition that

19  your tentative is still where it's going to be, then it's no

20  harm, no foul to me.

21           THE COURT:  Well, I do -- I'm not trying to curry

22  your favor.  I appreciate your inquiry.  I don't think I could

23  be candid and honest with you to say that the material that was

24  submitted to me on reply wasn't significant.  It was

25  significant.

1    I also am frustrated by the whole TRO preliminary process.

2    I could go on for hours telling you about my frustrations.  And

3    it's not because -- I hope you take my word at this -- it's not

4    because I'm lazy -- it's not because I'm intellectually lazy,

04:50PM 5    it's just such an expedited snapshot primarily on papers.  And

6    I don't say it gives short shrift to due process, but I'm a big

7    due process person.  I'm a big fan of trials and evidentiary

8    hearings.  And it's amazing to me how things change once you

9    have live witnesses and you see the whole picture.

04:51PM 10   But the law provides understandably so that we have to

11   have a mechanism for TROs and preliminary injunctions, and you,

12   Judge, have to make this decision.  And it jams you.  It jams

13   poor Mr. Lake because, you know, you're talking about some

14   serious issues.  And there's preliminary findings on these

04:51PM 15   serious issues, and you're freezing his assets.  It has drastic

16   draconian implications to him, and he's not being given ample

17   opportunity to respond and deal with it.  And he's getting it

18   from all directions, and he's being held accountable for

19   conduct, statements, that others make.  I get that.  I share

04:52PM 20   your frustration with it.  But unfortunately, it is what it is.

21   And the code, as you know, says I have to drop everything else

22   that I'm doing.

23   And the other things that I'm doing, I don't want to bore

24   you with, they're pretty significant.  And a lot of them

04:52PM 25   involve criminal matters, and a lot of them involve people

1    going away for a long period of time.  And the law says I have

2    to give this my top priority.  I have to read this over the

3    weekends.  I have to read this late at night.  You don't even

4    have the opportunity to thoroughly discuss and go over these

04:52PM 5    materials with your client before the law requires me to make

6    this decision.  So Mr. Borchard, you're singing to the choir

7    that this process, I sure wish it could be better.

8         What I can tell you is, listen, it's a preliminary

9    injunction.  I'm here.  After you go through all that material

04:53PM 10   and you feel that, you know, okay, there's something I got to

11   bring to the Court's attention, because I think we need to

12   modify this injunction or we need to get him to vacate it, I

13   would want, and I would expect you to come see me and present

14   that.  But I have to make a decision today, because the TRO

04:53PM 15   expires tomorrow.  I don't have the luxury of saying we can

16   continue this unless you are willing to, you know, give an

17   unlimited continuance of the TRO, which that doesn't make sense

18   to me.

19        What makes sense to me is I just go forward, I issue the

04:53PM 20   injunction.  And then as you go through the materials, you

21   think, "Okay, I've gone through this.  There's a lot of

22   problems with this, and you relied on this, Judge.  I'd like to

23   have you reconsider or bring a motion to amend the injunction

24   or motion to vacate the preliminary injunction."

04:54PM 25            MR. BORCHARD:  I appreciate that.  And again, I want

UNITED STATES DISTRICT COURT

to be very clear.  I'm not saying that the counsel for the FTC
or Mr. McNamara dropped these on me at the last moment.  I
don't think they were ready until the last moment.  And I know
the Court got them.  I've reviewed them, and I'm looking at
them, and I agree with you.  There's many that cause me to
pause and look at that -- it's going to require a substantial
amount of time.  Had those been presented at the -- for my
opposition so that when I presented my opposition, had I had
those ahead of time, I agree it's a great deal of material to
process, but I can't even reply to them when I get them after
my opposition has been filed.  So I'm a little prejudiced, but
I do understand what the Court is saying.  And I just had to
voice that.

          THE COURT:  I'm glad you voiced it.  And I'm not
sure my response addressed your concern as realizing -- I guess
what I'm saying is we're all prejudiced by this process.  But
it is the process, and I take you -- and I agree with you, I
don't find any fault on the FTC or on the receiver, because
they have to move quickly.  They don't have the luxury of
moving like a Court of Appeal with deliberation and
premeditation.

     We got to -- we're a triage unit, and it's a fire drill.
And from where Mr. Lake is sitting and from where you're
standing, you know, in a way -- arguably you're the ones that
are put at the biggest disadvantage by the expedited due

process.  But I guess, you know, it sounds obnoxious.  It is

what it is.  That is the process.  That's the law.

        MR. BORCHARD:  Okay.  So with that, and

understanding that I guess my next step is to look at the

04:56PM breadth of the injunction.

        THE COURT:  Preliminary injunction.

        MR. BORCHARD:  And I think the Court accurately

stated that as it pertains to the prohibited activities and the

like, with the exception of the asset freeze, I'm not here to

04:56PM argue those that, no, let him keep doing processing.  What I

have indicated to Mr. Lake, based on the Court's comments, that

him going forward, he does need to make a living.  He --

because at this point they have seized his bank account with

44,000, another bank account with 15, and another small one, so

04:56PM 1500.  So he is depleted.

    He is married with two children.  His oldest son, 11, is

autistic, is at home with, I believe insurance medical payments

that go between 3- to $4,000 a month.  And he has no way at

this point of paying those.  His liquid asset's gone and can't

04:57PM use credit cards, can't borrow money.  The only money -- and I

appreciate it, even though I can report to the -- counsel for

the FTC I have not yet been paid, but I appreciate the

modification that the Court granted to allow at least me to get

paid, and hopefully that will happen.  But as it pertains to

04:57PM Mr. Lake with the freeze, as it pertains to the other

1   defendants, freeze them.  Freeze them totally.  But as it

2   pertains to Mr. Lake, again, I'd ask that the Court balance the

3   equities here for this preliminary and allow him and his family

4   to at least breathe.

04:57PM 5       He will get a job.  He has worked for other law firms and

6   litigation support unrelated to loan modifications.  He's out

7   there looking.  His wife would look for a job, but she needs to

8   be at home with her son because of behavior issues.  He's

9   unable to attend school, so he is at home for those reasons.

04:58PM 10  But the medication to balance him is very expensive, and they

11  are paying that.  So it's --

12          THE COURT:  Can I pitch it this way to you.  I hear

13  you, and I'm sympathetic, but what I need you to do is to tee

14  it up as precisely as you can.  In other words, say, "Here is

04:58PM 15  the exact money that he needs to pay for these essential things

16  for his family and his son, daughter, wife."  Give it to me

17  specifically.  Give me the amounts.  Then if you can make a

18  showing that the money that you want to use for this was not

19  connected in any way to the $800 per file that he received, if

04:59PM 20  you can do that, even better.  If you can't -- I'm not saying

21  that that's going to be dispositive, but it's obviously going

22  to be more of a concern for me if the FTC can readily trace

23  that money to the $800 he received per file.

24          But if you can trace it that it is separate and it's

04:59PM 25  independent, that the money is desperately needed for the care

```
 1   for his autistic child, for food, for survival, then I would
 2   want to know that, and I -- my limited dealings with the FTC on
 3   this, I've got the impression that they have a soul, they're
 4   not heartless.  We don't have debtors' prison anymore in this
 5   country.  They're not trying to incarcerate Mr. Lake.  Their
 6   objective and their intent is to protect the consumers, and
 7   something is better than nothing for the consumer loss.  And
 8   from what I can tell, there's going to be a consumer loss, and
 9   it's going to be a multimillion-dollar consumer loss, and
10   there's not going to be enough money to cover that loss.
11       So I get why they want to freeze everything, and that's
12   what I'm inclined to do at this point, but I'm here next week
13   to receive a motion or an application for release of certain
14   funds.  If you can make that specific precise showing for me.
15           MR. BORCHARD:  And I'll do that.  And again, I guess
16   it's an advisory opinion, but helping me direct where I'm going
17   to tee this up for you, I'm not going to waste the Court's
18   time, I'm not going to waste the FTC's time.  If I'm having a
19   difficult time tracing, I suspect their position -- and I don't
20   want to argue for them to say if you can't trace it to an
21   independent source, I'm going to assume it was from the source.
22   And I'm not saying it is, but I'm anticipating an issue, but
23   I'm still struggling with being able to tee it up with you.
24       I would present to the Court and to counsel for the FTC
25   what credit he does have or his wife does have available that
```

05:00PM
05:00PM
05:01PM
05:01PM
05:01PM

UNITED STATES DISTRICT COURT

1    if he does get a job, he'll be able to pay it back, but at

2    least it could go on a credit card if I'm having a difficult

3    time tracing the funds.  I'm just looking for some source that

4    is unrelated to monies that he has.

05:02PM  5        Because I understand the counsel for the FTC, when it came

6    to my attorney's fees, we will submit a letter to counsel

7    showing me where the funds -- if they were independent, not

8    directly related, third source, arm's length, I understand

9    that, recognize it.

05:02PM 10        If I have a BankAmericard or an American Express, I'm not

11   sure what the credit card is that should prove that it's a

12   third party.  But if a third party is going to loan him money,

13   which I don't know if that's the case right now, I would submit

14   that as well.  Because I know the need for financial survival

05:02PM 15   is critical to date.  It has been because of everything that

16   has been seized.

17        So I guess I'm asking, because the Court made mention of

18   that earlier, if I can't demonstrate his ability to repay the

19   debt, I don't think it's fair to let him go into debt.  He's

05:02PM 20   not injured.  He can work.  He will get a job.  I can't tell

21   you when he will, but he is capable.  And he will have to pay

22   those loans back.

23            THE COURT:  And what I -- what I'm saying is try to

24   make it as concrete as an issue as you can for me, not an

05:03PM 25   advisory, academic one.  In other words, here is the person

```
 1   who's willing to loan him money, and here is how he intends to

 2   pay it back.  And he needs this money to pay for medication for

 3   his autistic child.  To me, that is a compelling showing.

 4        So I'm not trying to -- because I don't know what the

 5   facts are, Mr. Borchard, but let me give you an example from

 6   another case, okay?

 7             MR. BORCHARD:  Okay.

 8             THE COURT:  Another case, not this case.  I had a

 9   similar asset freeze, and the individual wanted relief.  But

10   when it came down to it, he wanted the money to put in gas into

11   his Mercedes.  I don't even drive a Mercedes.  He wanted the

12   gas to -- I mean he wanted the money to pay for a gym

13   membership.  I don't have a gym membership.  And to me, that

14   was a no-brainer.  I'm not making a modification for that.

15        You've thrown out one precise issue.  He needs -- he needs

16   money to pay for medication for his autistic child.  That is a

17   compelling reason.  What I'd like to know is, well, is there

18   any other sources of income to -- that is available from his

19   wife or others to pay for that?  No?  Okay, tell me why not.

20   Tell me, okay, here is the source that he's going to get some

21   money.  And he's going to try to repay the loan or whatever

22   this way.

23        Again, I'm not trying to limit you to medication for his

24   autistic child, but it all depends on what exactly you're

25   asking the money for.  But just this general -- he needs it to
```

05:03PM (line 5)
05:03PM (line 10)
05:04PM (line 15)
05:04PM (line 20)
05:05PM (line 25)

live.  It's not going to be good enough.  I'm going to need

specifics.  And yes, I'm here to tell you I will entertain

that.  Will I grant it?  I don't know until I see exactly how

much you need, how you're going to get it, how you're going to

05:05PM  repay it, what it's going to be used for.  Then I can -- then I

can respond.

MR. BORCHARD:  I will provide that.  And I

appreciate that, and I can assure you I would not insult this

Court with a request for a gym membership.  I appreciate that.

05:05PM  That would not be on my Income and Expense Declaration.  And

I'm surprised someone could put that on there.

THE COURT:  That's why I was trying to be really

careful.  Not this case.  Not this case.  I wasn't trying to

cast any dispersions to you or to Mr. Lake in the seriousness

05:06PM  of what he needs the money for.  I get it.  And this is a civil

case.  He does have to live.

Do I want to willy-nilly say, "Well, I don't care about

medication for his autistic child"?  Of course not.  I sure

hope the FTC doesn't have that attitude either.  And everything

05:06PM  they've shown me is they don't.  But until we have all the

facts before us, you know, we can't give you a definitive

answer.

MR. BORCHARD:  Understood.

Mr. Lake --

05:06PM  I apologize --

```
 1          THE COURT:  Would you like to consult with him?
 2          MR. BORCHARD:  Yes.  Briefly.  Thank you,
 3   Your Honor.
 4          (Mr. Borchard and the defendant
 5           confer off the record.)
 6          THE COURT:  Mr. Cohen or Ms. Lederer, is there
 7   anything you'd like to say in response to what I've said?
 8          MR. COHEN:  Yes, Your Honor.
 9          MR. BORCHARD:  Thank you, Your Honor.  I've had a
10   chance to consult with him, and what I will do is I will
11   prepare the necessary documentation.  I'll provide it obviously
12   to counsel, see if we can come to some type of agreement and
13   present it to Your Honor.  Hopefully we can.  If not, we'll
14   come in and hash it out before you, so Mr. Lake and his family
15   have some way to at least say they'll get to either an ultimate
16   resolution or trial in this matter for an evidentiary hearing.
17          THE COURT:  Good.  And another case, not the one I
18   was telling you about, there were many requests by one or more
19   of the defendants for modification for living expenses, and the
20   Government agency, I think it was the FTC.  But regardless, the
21   agency agreed to many of them, not all of them, but many of
22   them.  And if you can work it out and you both approve of it,
23   the chances of me approving it are very, very high.  If you
24   can't work it out, that's what I'm here for.  And even if the
25   FTC opposes it, I will still seriously consider it.
```

1          MR. BORCHARD:  I appreciate it.  And we have had a

2     very good working relationship.  Counsel has been very

3     communicative, open and engaging, so -- and worked very well

4     with me in terms of an avenue to at least see that I could be

05:09PM 5     paid, which I appreciate it.  So I trust that will continue in

6     the future.  Thank you, Your Honor.

7          THE COURT:  Good.  Good.

8        Mr. Cohen.

9          MR. COHEN:  Briefly, Your Honor.

05:09PM 10      Certainly we agree with Mr. Borchard.

11          THE COURT:  Is it Borchard or --

12          MR. BORCHARD:  Borchard.

13          MR. COHEN:  We agree with Mr. Borchard that we've

14     had a good relationship.  And to the extent we will agree, we

05:09PM 15     will agree.  We appreciate the Court's recognition that the FTC

16     does have a soul, but we want to make a couple points that I

17     think are germane to how asset-freeze issues are evaluated down

18     the line.  And this is always challenging for us to say.

19        All of these cases present very difficult issues.  I have

05:10PM 20     no reason -- we have no reason to disbelieve that Mr. Lake --

21     Defendant Lake does not have a serious need for the money.  But

22     it is important to remember as well that the victims also have

23     a serious need for that money and that there are other victims,

24     many victims, hundreds of victims.  And whether it's an

05:10PM 25     autistic child or, you know, other types of medical expenses,

```
 1    they're all in a similar position.

 2         So there is ultimately not going to be a perfect ending to

 3    this no matter what.  And that money that is currently frozen,

 4    we believe belongs to them.  And no matter how dire the need

 5    may be from Mr. Lake's standpoint, ultimately if it's their

 6    money, it should be returned to them.

 7         The next point --

 8              THE COURT:  Before you go to that --

 9              MR. COHEN:  Yes.

10              THE COURT:  -- I hear you, and I also recognize that

11    many of the consumers that you're representing, they have

12    tragic circumstances themselves, and many of them have lost

13    their home or are about to lose their home.  So I get that too.

14    But again, Mr. Borchard was envisioning -- I don't know if

15    these are going to be the facts, but is envisioning a situation

16    where there is some source of giving new money.  And Mr. Lake

17    has the ability to repay that new money, or it's going to be a

18    gift by a friend or someone, new money.

19         And there is a risk that this lender or giftor isn't going

20    to get paid back, but is willing to take that risk for whatever

21    reason.  And this money is going to be used for a noble,

22    essential purpose.  To me, that is a lot more persuasive than

23    "I want to use money that was clearly traceable to the $800 per

24    file I received.  And I want to use that money to pay for gas

25    in my car or to pay a mortgage payment."  That's not nearly as
```

05:10PM  (line 5)
05:10PM  (line 10)
05:11PM  (line 15)
05:11PM  (line 20)
05:12PM  (line 25)

**UNITED STATES DISTRICT COURT**

<pre>
 1    compelling -- as convincing as the former situation.
 2         And until we know exactly what the facts are, I guess all
 3    I'm asking you is to keep an open mind, because I understand
 4    what the law is, and I understand that there's been victims
05:12PM 5    here, the consumers, and that's their money, but I'm not going
 6    to be able to ever make them whole from what I'm hearing.
 7    They're going to suffer.
 8         Does that mean I'm oblivious to their suffering?  No.
 9    Does that mean I shouldn't always try to minimize their
05:13PM 10   suffering?  I should always try to do that.  And I know that's
11   what your job and your mission is, but what the situation
12   Mr. Borchard is suggesting is this is new money, and at this
13   point of the proceeding where it's not a final judgment, it's a
14   preliminary injunction, you know, there's no absolutes.
05:13PM 15   There's no bright lines.  This is going to have to be a
16   case-by-case situation.  And I agree with you.  You said it
17   very well.  There's no winners here.  Everybody's losers.  It's
18   how big of a loser are you going to be.
19              MR. COHEN:  Yes, Your Honor.  And with respect to
05:13PM 20   new money, that's very significant.  I think it's at least
21   likely that if there is a sufficient showing on behalf of the
22   defendant, that it is, in fact, new money, that we will be able
23   to reach an agreement without even having to bring it to the
24   Court's attention.  We were able to do that with respect to the
05:14PM 25   prior modification to the TRO to allow payment for Mr. --
</pre>

1    Defendant Lake's defense.  So we're certainly open to that.

2         There is an issue, however, with tracing as being distinct

3    from new money.  Now tracing is one way which money could be

4    established as being new money, but tracing sometimes presents

05:14PM 5    other problems.  The law does not require that only assets be

6    frozen that are specifically traceable to the $800 per file

7    that Mr. Lake received.

8         As the Court observed earlier, there is joint and several

9    liability.  Really the key is that it's new money.  So if

05:15PM 10   Mr. Lake goes out and obtains additional income, whether that

11   is from a loan or whether that is from new employment or just

12   another source, that is very likely to be unproblematic as long

13   as we're able to confirm it.  However, if the money is, in

14   effect, old money, tracing presents a number of problems.  And

05:15PM 15   we wanted to make that clear, that ultimately it may have to be

16   brought before the Court to brief specifically the issue of the

17   tracing.

18        But we don't believe that it's the case that it is

19   necessary for the FTC to establish in order to maintain the

05:15PM 20   asset freeze that a particular dollar and a particular frozen

21   bank account was a dollar that was linked to an $800 payment.

22              THE COURT:  I understand.

23              MR. COHEN:  Nothing further.

24              THE COURT:  Okay.  Well then what I'm going to do is

05:15PM 25   I'm going to just modify the proposed preliminary injunction

1    for Mr. Lake as well as the corporate entities by just deleting

2    the FTCs, and then I'm just going to go ahead and sign them and

3    issue them this evening.

4         MR. BORCHARD:  Your Honor, can I inquire?  On

05:16PM 5    Page 15 of 25 of the Proposed Order, just so, again, when I'm

6    explaining it to my client, I want to make sure we're not going

7    to trip on our shoelaces.  And it's Subsection (f).

8         THE COURT:  And your question, I am anticipating is,

9    is this new customers unrelated to the mortgage business, or is

05:16PM 10   this customers from the mortgage business that Mr. Lake may get

11   his hands on somehow by having checks or money orders?

12        MR. BORCHARD:  Correct.  And my note here is future

13   checks from consumers, clients and customers.  If they were --

14   obviously if it's within the context of the activities

05:17PM 15   described in their Complaint, then it's clear to me.  But if

16   it's future checks he may receive from a third party unrelated

17   and new money, again, that that is not what's anticipated in

18   Subsection (f).

19        THE COURT:  That's my intent, and that's my

05:17PM 20   understanding.  But with that said, I strongly, strongly

21   encourage if this is new money, before he cashes the check,

22   before he cashes the money order, consult with the FTC, because

23   then it doesn't look suspicious.  It doesn't look nefarious.

24   Because if they find out or if the receiver finds out there's

05:18PM 25   checks Mr. Lake is getting his hands on and he's cashing them,

**UNITED STATES DISTRICT COURT**

1      the impression with everything is that it's money from the old

2      customers.

3          So transparency is important.  And like it or not, we're

4      in this stage now where he has very little financial privacy.

05:18PM  5   And that's a tough pill to swallow, I get it, but that's where

6      we're at right now.  The bottom line, he doesn't have very much

7      financial privacy.  So I would strongly encourage him to let

8      you know, and then you let the FTC and the receiver know about

9      any new money sources.

05:18PM 10          MR. BORCHARD:  I'll do that.  Thank you, Your Honor.

11              THE COURT:  Okay.

12          So that is my intent.  I will delete the caption of the

13      FTC from the orders and delete the word "proposed," and then I

14      was going to sign both orders.

05:18PM 15          MR. COHEN:  Thank you, Your Honor.

16              MR. BORCHARD:  Thank you, Your Honor.

17              THE COURT:  Thank you.

18              THE COURTROOM DEPUTY:  All rise.

19              **(Proceedings concluded at 5:18 p.m.)**

20                          **--oOo--**

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3   COUNTY OF LOS ANGELES   )
                             )
 4   STATE OF CALIFORNIA     )

 5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, in and for the United States District Court for

 7   the Central District of California, do hereby certify that

 8   pursuant to Section 753, Title 28, United States Code that the

 9   foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   Date:  October 28, 2015

16

17

18

19                            /S/ DEBBIE HINO-SPAAN_

20                      Debbie Hino-Spaan, CSR No. 7953
                        Federal Official Court Reporter
21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**