# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. SACV 15-00585-CJC (JPRx) |
| Plaintiff, | |
| | **AMENDED FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT DENNY LAKE** |
| v. | |
| | Judge: Hon. Cormac J. Carney |
| | Courtroom 9B |
| DENNY LAKE, *et al*. | |
| Defendants. | |

Plaintiff Federal Trade Commission ("Commission" or "FTC") filed its Complaint for Permanent Injunction and Other Equitable Relief on April 14, 2015, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538.  On January 11, 2015, Plaintiff filed a Motion for Summary Judgment Against Defendant Denny Lake ("Lake"), and the Court granted that motion on February 24, 2016.  The Court later amended and altered the order granting the motion, based on a clerical mistake.  Based on the Court's amended order granting summary judgment, the Court enters this Amended Final Judgment and Permanent Injunction Against Defendant Denny Lake.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

A. "**Assisting others**" includes:

   1. performing customer service functions, including receiving or responding to consumer complaints;

   2. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

1         3.     formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

        4.     providing names of, or assisting in the generation of, potential customers;

        5.     performing marketing services of any kind including, but not limited to, telemarketing;

        6.     performing billing or payment services of any kind;

        7.     acting or serving as an owner, officer, director, manager, or principal of any entity.

    B.     "**Defendant**" means Denny Lake (also d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Agency, and Advocacy Program).

    C.     "**Financial Products**" excludes anything defined as either "mortgage-related financial product or service" or "secured or unsecured debt relief product or service" as defined by this Order, and means any

        1.     product, service, plan, or program represented, expressly or by implication, to:

        a.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

        b.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

        c.     improve, repair, or arrange to improve or repair, any consumer's credit record, credit history, or credit rating;

        d.     provide advice or assistance to improve any consumer's credit record, credit history, or credit rating;

        2. product, service, plan, or program, that involves the sale, purchase, transfer or insurance of assets or debt for a consumer, including those provided by financial institutions, consumer finance companies, insurance companies, brokerages, investment managers, investment or financial advisors, or public-sector entities providing similar products and services.

    D. "**Mortgage-Related Financial product or service**" means any product, service, plan, or program represented, expressly or by implication, to provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit related to real property.

    E. "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

    F. "**Secured or unsecured debt relief product or service**" means:

        1. With respect to any mortgage, loan, debt, or obligation between a person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

            a. stop, prevent, or postpone any mortgage or deed of foreclosure sale for a person's dwelling, any other sale of collateral, any repossession of a person's dwelling or other collateral, or otherwise save a person's dwelling or other collateral from foreclosure or repossession;

            b. negotiate, obtain, or arrange a modification, or renegotiate, settle, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a person to a secured or unsecured creditor or debt collector;

1            c.    obtain any forbearance or modification in the timing of
2  payments from any secured or unsecured holder or servicer of any mortgage, loan,
3  debt, or obligation;
4            d.    negotiate, obtain, or arrange any extension of the period
5  of time within which a person may (i) cure his or her default on the mortgage, loan,
6  debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii)
7  redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the
8  mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;
9            e.    obtain any waiver of an acceleration clause or balloon
10 payment contained in any promissory note or contract secured by any dwelling or
11 other collateral; or
12           f.    negotiate, obtain, or arrange (i) a short sale of a dwelling
13 or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of
14 a mortgage, loan, debt, or obligation other than a sale to a third party that is not the
15 secured or unsecured loan holder.
16 The foregoing shall include any manner of claimed assistance, including auditing
17 or examining a person's application for the mortgage, loan, debt, or obligation.
18       2.    With respect to any loan, debt, or obligation between a person
19 and one or more unsecured creditors or debt collectors, any product, service, plan,
20 or program represented, expressly or by implication, to:
21           a.    repay one or more unsecured loans, debts, or obligations;
22 or
23           b.    combine unsecured loans, debts, or obligations into one
24 or more new loans, debts, or obligations.
25     G.    "**Telemarketing**" means any plan, program, or campaign which is
26 conducted to induce the purchase of any product, service, plan, or program by use

of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

### I. BAN ON SECURED AND UNSECURED DEBT RELIEF PRODUCTS AND SERVICES

IT IS ORDERED that Defendant is permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or assisting others in the advertising, marketing, promoting, offering for sale, or selling, of any secured or unsecured debt relief product or service.

### II. BAN ON MORTGAGE-RELATED FINANCIAL PRODUCTS AND SERVICES

IT IS FURTHER ORDERED that Defendant is permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or assisting others in the advertising, marketing, promoting, offering for sale, or selling, of any mortgage-related financial product or service.

### III. BAN ON TELEMARKETING

IT IS FURTHER ORDERED that Defendant is permanently restrained and enjoined from engaging or participating in telemarketing, directly or through an intermediary, including, but not limited to, by consulting, brokering, planning, investing, marketing, or by providing customer service, billing, or payment services.

### IV. PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO FINANCIAL PRODUCTS

IT IS FURTHER ORDERED that Defendant, his officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for

sale, or selling of any financial products, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

    A.    the terms or rates that are available for any loan or other extension of credit, including:

        1.    closing costs or other fees;

        2.    the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms;

        3.    the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable;

        4.    the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit;

        5.    the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

        6.    whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or

        7.    that the credit does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees;

    B.    the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history;

    C.    that a consumer will receive legal representation;

      D.    any special connections or relationships with lenders or financial institutions; or

      E.    any other fact material to consumers concerning any financial product, service, plan, or program.

## V. PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO ANY PRODUCTS OR SERVICES

IT IS FURTHER ORDERED that Defendant, his officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any product, service, plan, or program, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

      A.    any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

      B.    that any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, or any program, including but not limited to any public, non-profit, or other non-commercial program;

      C.    the nature, expertise, position, or job title of any person who provides any product, service, plan, or program;

      D.    the person who will provide any product, service, plan, or program to any consumer;

      E.    that any person providing a testimonial has purchased, received, or used the product, service, plan, or program;

  F. that the experience represented in a testimonial of the product, service, plan, or program represents the person's actual experience resulting from the use of the product, service, plan, or program under the circumstances depicted in the advertisement;

  G. that a consumer will receive legal representation;

  H. any special connections or relationships with lenders or financial institutions; or

  I. any other fact material to consumers concerning any product, service, plan, or program.

## VI. PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

  IT IS FURTHER ORDERED that Defendant, his officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any financial product, are permanently restrained and enjoined from making any representation or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any financial product, unless the representation is non-misleading, and, at the time such representation is made, Defendant possesses and relies upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## VII. MONETARY JUDGMENT

  IT IS FURTHER ORDERED that:

  A. Judgment in the amount of Two Million, Three Hundred Forty-Nine Thousand, Eight Hundred Eighty-Five Dollars ($2,349,885.00) is entered in favor of the Commission and against Defendant as equitable monetary relief.

B. Any entity or person, including Defendant or any financial institution, holding Defendant's frozen assets must transfer those assets to the Receiver in accordance with the Receiver's instructions, within seven days of the entry of this Order. Those assets include:

1. Union Bank account nos. XXXXXX3272, XXXXXX2632, XXXXXX7892;
2. US Bank account nos. XXXXXXXX9562, XXXXXXXX0066;
3. Simple IRA in the name of Denny Lake, account no. XXXX7004;
4. Simple IRA in the name of Stephanie Lake, account no. XXX7036;
5. Roth IRA in the name of Denny Lake, account no. XXXX4291; and
6. $12,000 in cash.

After the Receiver's court-approved fees have been fully satisfied, the Receiver must transfer the balance to the Commission.

C. Defendant shall take all steps necessary to assist in the transfer of all frozen assets, including those identified in Subsection B. In the event it is necessary to execute additional documents to transfer, liquidate, or assign Defendant's assets or any other assets surrendered under this Order, Defendant shall execute such documents within three days of a request from a representative of the Commission.

D. The Asset Freeze in the Preliminary Injunction is modified only with respect to Defendant Lake. Once all of Defendant's frozen assets are transferred in accordance with subsection B, the Asset Freeze will dissolve with respect to Defendant Lake.

E. Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

F.  Defendant's Social Security number, which he previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

G.  All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.

## VIII. CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendant, his officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.  disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), that any defendant obtained prior to entry of this Order in connection with the marketing or promotion of mortgage assistance relief products or services or debt relief products or services; and

B.  failing to destroy such consumer information in all forms in their possession, custody, or control within 10 days after entry of this Order.

Provided, however, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX. ORDER ACKNOWLEDGEMENTS

IT IS FURTHER ORDERED that Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

## X. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this 22nd day of March, 2016.

Dated: March 22, 2016

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE